**LEISURE DYNAMICS, INC., Plaintiff,**

v.

**FALSTAFF BREWING CORPORATION, Defendant.**

**No. 49717.**

Supreme Court of Minnesota.

July 3, 1980.

Gray, Plant, Mooty, Mooty & Bennett, Richard N. Flint, and Jeffrey J. Keyes, Minneapolis, for plaintiff.

O'Connor & Hannan, Joe A. Walters, James R. Dorsey, and Robert A. Brunig, Minneapolis, for defendant.

YETKA, Justice.

Pursuant to Minn.Stat. § 480.061 (1978), the United States District Court for the District of Minnesota has certified the following five questions of law to this court, all of which concern the statutes of limitations on the collection of Minnesota sales and use tax from a buyer by a seller:

## QUESTIONS OF LAW

1. What statute of limitations controls a seller's claim for collection of sales tax from a buyer brought under Minn.Stat. § 297A.03, subd. 1 (1978)? More specifically, is it the 6-year statute of limitations contained in Minn.Stat. § 541.05, subd. 1(2) (1978), or the 9-month statute of limitations contained in Minn.Stat. § 297A.34, subd. 5 (1978)?

2. If Minn.Stat. § 541.05, subd. 1(2) (1978), applies to such a claim, when did the cause of action for the claim under section 297A.03, subdivision 1, accrue, at the time of the sale or at the time that the seller paid the tax to the state after final disposition of an appeal to the Minnesota Tax Court of Appeals?

3. What statute of limitations controls a seller's claim for collection of sales tax from a buyer brought under a breach of contract

theory? More specifically, is it the 6-year statute of limitations contained in Minn. Stat. § 541.05, subd. 1(1) (1978), the 4-year statute of limitations contained in Minn. Stat. § 336.2–725 (1978), or the 9-month statute of limitations contained in Minn. Stat. § 297A.34, subd. 5 (1978)?

4. If Minn.Stat. § 541.05, subd. 1(1) (1978), or Minn.Stat. § 336.2–725 (1978) applies to such a claim, when did the cause of action for breach of a contract to pay sales tax accrue, at the time of the sale or at the time that the seller paid the tax to the state after final disposition of an appeal to the Minnesota Tax Court of Appeals?

5. Under the stipulated facts submitted by the parties, are the causes of action asserted by the plaintiff barred under the applicable statute of limitations?

The facts of the case have been stipulated by the parties, plaintiff Leisure Dynamics, Inc. ("Leisure") and defendant Falstaff Brewing Corp. ("Falstaff"). Between August 1, 1967, and September 30, 1970, Lakeside Industries, Inc., a division of Leisure, sold point-of-sale advertising displays (*i.e.* beer signs) and the tooling to make those signs to Falstaff. Leisure collected no sales tax on the signs or the sign tooling.

On July 20, 1971, the Minnesota Department of Taxation determined that the sales of beer signs made between 1967 and 1970 were subject to Minnesota sales tax even though most of the signs were shipped to other states. Leisure contested that assessment, and Falstaff cooperated in the contest by supplying information to Leisure. Following a hearing on March 13, 1972, before the Commissioner of Taxation, the commissioner decided not to pursue the assessment on signs shipped outstate. Thus, by contesting the tax on the signs themselves, Leisure saved the various breweries a total claimed tax liability of $438,229.05.

On May 25, 1972, the Commissioner of Revenue of the State of Minnesota determined that the sign tooling sold by Leisure to Falstaff was subject to Minnesota sales tax pursuant to Minn.Stat. § 297A.02 (1978). Leisure decided to contest this assessment also and appealed the commission-

er's determination to the Minnesota Tax Court on June 20, 1972. The tax court held trial on the matter on September 17, 1973, but did not file an order until June 27, 1977. The order found tax in the amount of $37,579.57 to be due on the sign tooling, which Leisure paid in July 1977.

Leisure then sent letters to various breweries advising them of the sales tax liability; three breweries paid their share of tax to Leisure. Falstaff refused to pay, however, and letters from Falstaff show that it never cooperated or conceded any liability concerning the sign tooling taxes.

Leisure commenced an action in the United States District Court for the District of Minnesota on July 14, 1978, to collect sales tax of $18,269.59 from Falstaff. Falstaff moved to dismiss the action or for summary judgment on the ground that Leisure's action was barred by the applicable Minnesota statutes of limitation. The United States District Court consequently certified the five previously stated questions as ripe for resolution by this court.

1. The first question certified is what statute of limitations applies to a seller's cause of action against a buyer for sales tax brought pursuant to Minn.Stat. § 297A.03, subd. 1 (1978):

The tax shall be stated and charged separately from the sales price or charge for service insofar as practicable and shall be collected by the seller from the purchaser and shall be a debt from the purchaser to the seller recoverable at law in the same manner as other debts.

The parties both agree that the 6-year statute of limitations on statutory liabilities applies to the seller's cause of action:

Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years:

\* \* \* \* \* \*

(2) Upon a liability created by statute \* \* \*.

Minn.Stat. § 541.05, subd. 1(2) (1978).

The issue here is whether the 9-month limitation contained in · Minn.Stat.

§ 297A.34, subd. 5 (1978), is also applicable in this case. To make a decision on this issue, it is necessary to look at the entire statute:

Subdivision 1. Except as otherwise provided in this chapter, the amount of taxes assessable with respect to any taxable period shall be assessed within three years after the return for such period is filed. Such taxes shall be deemed to have been assessed within the meaning of this section whenever the commissioner shall have prepared a notice of tax assessment and mailed the same to the person required to file the return to the post office address given in the return. The record of such mailing shall be presumptive evidence of the giving of such notice, and such records shall be preserved by the commissioner.

Subd. 2. If the person required to file the return omits from the return a dollar amount properly includible therein which is in excess of 25 percent of the dollar amount reported in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun at any time within five years after the return was filed.

Subd. 3. For the purposes of this section and of section 297A.35, a return filed before the last day prescribed by law for filing thereof shall be considered as filed on such last day.

Subd. 4. In the case of a false or fraudulent return with intent to evade tax or of failure with the same intent to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun at any time.

Subd. 5. Where the assessment of any tax is hereafter made within the period of limitation properly applicable thereto, *such tax may be collected by a proceeding in court*, but only if begun:

(a) Not later than nine months after the expiration of the period for the assessment of the tax;

(b) Not later than nine months after final disposition of any appeal from the order of assessment.

Subd. 6. Where before the expiration of the time prescribed in subdivision 1 or for the assessment of the tax, the commissioner and the taxpayer consent in writing to an extension of time for the assessment of the tax, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

(Emphasis added.)

Falstaff argues that subdivision 5, by its plain meaning, applies to this case. The action brought by Leisure against Falstaff is "a proceeding in court" to collect tax. Therefore, Falstaff contends, subsection (b) of subdivision 5 gave Leisure 9 months following the tax court order in which to initiate its action against Falstaff, assuming that the 6-year statute had already run. Leisure initiated the action more than 1 year after the tax court order and would be barred from bringing the action if Falstaff's interpretation is accepted.

Leisure argues that the limitations set out in section 297A.34 were intended to apply only to the Commissioner of Revenue, not to a seller collecting tax from a buyer. The statute creating the seller's cause of action, section 297A.03, is found at the beginning of chapter 297A. It describes the tax as a debt from the purchaser to the seller recoverable at law in the same manner as other debts. The statutory sections between 297A.26 and 297A.33 essentially deal with rights and responsibilities of the commissioner. Section 297A.34 itself deals in large part with assessment of the tax, which can only be accomplished by the commissioner, not an individual seller. More specifically, section 297A.34, subdivision 5(a), must apply only to the commissioner because the 3-year assessment period plus 9 additional months will always be less time than the 6 years afforded a seller under section 541.05, subdivision 1(2). In other words, it would be superfluous to give a seller 9 additional months to begin an action for which he still had 3 years to initi-

ate. Since section 297A.34, subdivision 5(a), applies only to the commissioner, and the context of the statutory sections preceding section 297A.34 relates to the commissioner, Leisure argues, section 297A.34, subdivision 5(b), must apply only to the commissioner.

 Leisure's argument is compelling on this issue. When read in context, it is clear that section 297A.34, subdivision 5(b), was intended to apply to the commissioner rather than to a seller. In answer to question 1 then, the 6-year statute of Minn.Stat. § 541.05, subd. 1(2) (1978), applies to the seller's cause of action under Minn.Stat. § 297A.03, subd. 1 (1978).

2. Falstaff argues that the seller's statutory cause of action for sales tax accrues at the time of the sale. We agree.

Section 297A.03, subdivision 1, describes the buyer's liability for sales tax as a *debt* to the seller which should be stated and charged separately from the sales price. This language indicates that the buyer's debt becomes due and payable at the time of sale.

 The general rule in Minnesota is that a statute of limitations begins to run from the time an action can be commenced. *Butler v. Minneapolis Police Relief Association*, 283 Minn. 70, 166 N.W.2d 705 (1969); *Bachertz v. Hayes-Lucas Lumber Co.*, 201 Minn. 171, 275 N.W. 694 (1937). If the debt arises at the time of sale, surely the seller may begin an action immediately if the buyer fails to pay the tax at the time the contract price is paid. The fact that the seller failed to charge the tax has been stated not to change this rule:

> Mississippi's *sales* tax must be added to the sale price and collected by the vendor from the vendee at the time of purchase. * * * This sales tax not only constitutes a legal obligation from the vendor to the State, * * * but creates a debtor-creditor relationship between the vendor and his vendee, who is legally liable to his vendor for the full amount of the tax, even if the seller has unlawfully failed to collect it from him. *See Woodrich v. St. Catherine Gravel Co.*, 188 Miss. 417, 195 So. 307 (1940).

*United States v. State Tax Commission*, 378 F.Supp. 558, 568 n. 19 (S.D.Miss.1974), *rev'd on other grounds*, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975).

In a case with facts similar to this one, the Washington Court of Appeals held the statute began to run at the time the contract price was paid:

> The statute of limitations begins to run on a cause of action arising from the debtor-creditor relationship created by RCW 82.08.050 from the date the sales tax should have been paid. * * * Here the statute runs from May 7, 1968, the date the contract price was paid. Urban Construction argues that it was not advised to pay the sales tax until assessed by the Department of Revenue and therefore the statute of limitations runs from that date. We disagree. * * * The cause of action here accrued when the obligation to pay the tax arose, *i.e.*, when the contract price was paid. Lack of knowledge on the part of Urban Construction [the seller], if proved, is of no legal significance. Urban Construction is charged with knowledge of the statutory obligation.

*Urban Construction Co., Inc. v. Seattle Urban League*, 12 Wash.App. 935, 533 P.2d 392, 394 (1975). The logic of this case is compelling.

In Minnesota, as in Washington, the seller has the burden of proof to overcome the statutory presumption that tax is due:

> For the purpose of the proper administration of sections 297A.01 to 297A.44 and to prevent evasion of the tax, it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale is not a sale at retail is upon the person who makes the sale * * *.

Minn.Stat. § 297A.09 (1978). This statute places on the seller the burden to decide if the tax is due and to be prepared to prove tax is not due if he fails to collect it. Again, the inference is that the time of sale is the focal point for the seller's determination whether tax is due.

■ Finally, the Minnesota legislature has spoken as to when a cause of action for sales and use taxes imposed by another state accrues:

Actions can only be commenced within the periods prescribed in this chapter, after the cause of action accrues, except where a different limitation is prescribed by the uniform commercial code or, in special cases, by other statute; provided that a cause of action for sales or use taxes imposed by any other state *shall be deemed to have accrued at the time such tax first becomes due and payable.*

Minn.Stat. § 541.01 (1978) (emphasis added). Thus, an action for Minnesota sales tax should also be deemed to have accrued when the tax first becomes due and payable.

■ Leisure suggests that, by analogy to an action for indemnity and contribution, the cause of action accrued when Leisure paid the sales tax to the state.

It is established law in Minnesota that a claim for contribution or indemnity does not accrue until the person entitled to the contribution or indemnity has sustained damage by paying a loss or discharging a liability that should properly be the responsibility of another.

*Dixon v. Northwestern National Bank of Minneapolis*, 275 F.Supp. 582, 584 (D.Minn. 1967).

This rule of law has been applied primarily in the context of tort actions. *See, e.g., Grothe v. Shaffer*, 305 Minn. 17, 232 N.W.2d 227 (1975). It has also been applied in the case of a strict contract of indemnity. *Aetna Casualty & Surety Co. v. Bros*, 226 Minn. 466, 33 N.W.2d 46 (1948). More recently, the court held that the notice requirements of the civil damages act do not bar a third-party complaint for indemnity brought by one liquor vendor against another. *Hammerschmidt v. Moore*, 274 N.W.2d 79 (Minn. 1978). The court rejected the argument of the third-party defendants that, because common liability arises the instant the tort is committed, they cannot be sued for contribution after the action of the plaintiffs against them is barred by the statute of limitations.

In a tort action, it is unclear whether the primary defendant will be found liable at all, and it therefore makes sense to determine liability before involving a third-party indemnitor. In this case, the liability for sales tax was similarly uncertain. Had Leisure prevailed in the tax court, as Leisure argues it might have, there would have been no need to begin an action against Falstaff.

However, the indemnity theory flies in the face of the statutory presumption that tax is due, which the legislature purposely established to prevent evasion of the tax. Minn.Stat. § 297A.09 (1978). Further, if this court were to hold that an action by a seller against a buyer for sales tax is always analogous to an indemnity action, a seller not contesting the tax would first have to pay the state and then sue the buyer. Such a result would be contrary to the creditor-debtor relationship established by section 297A.03, subdivision 1. We therefore do not believe the indemnity theory was intended to apply in the situation presented by this case.[1] The seller's cause of action under section 297A.03, subdivision 1, accrued at the time of sale.

■ 3. The federal court has asked us what statute of limitations controls a seller's claim for collection of sales tax from a buyer brought under a breach of contract theory. The parties have not clearly expressed what type of contract theory is involved in this case. The federal court has requested, however, that we answer the certified questions based on the facts stipulated by the parties. Those facts show that Falstaff never expressly agreed to pay the

---

1. In this case, there are no alternative theories which would fix the accrual of the action at some point later than the time of sale. Leisure initially argued in briefs before the federal court that the statute of limitations was tolled during the litigation in tax court but later abandoned this argument. It cannot be argued that the statute is tolled while Leisure contested the tax. This court rejected such an argument in *Knipple v. Lipke*, 211 Minn. 238, 300 N.W. 620 (1941).

sales tax which Leisure ultimately paid the state. The only contract theory we can conceive of under the stipulated facts is an implied contract to pay sales tax based on the underlying contracts for the sales of signs and sign tooling.[2]

The uniform commercial code prescribes a 4-year limitations period for breach of any contract for sale of goods: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Minn.Stat. § 336.2–725(1) (1978). Article two of the UCC applies by its terms only to transactions in goods. Minn.Stat. § 336.2–102 (1978). " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale * * *." Minn.Stat. § 336.2–105(1) (1978). The sign tooling in this case consists of movable items although they were normally kept by Leisure rather than moved to possession of the buyer. Since the underlying contract here is for the sale of goods, section 336.2–725(1) would apply even though Leisure bases its claim on an implied contract to pay tax on the sign tooling.

Neither of the other two possible statutes would apply in this case. As previously discussed, the 9-month statute of section 297A.34, subdivision 5(b), does not apply to a seller collecting tax from a buyer. Minn. Stat. § 541.05, subdivision 1(1), is likewise inapplicable because it expressly excludes those cases in which the uniform commercial code provides a limitation. In this case, the uniform commercial code provides a 4-year limitation.

■ 4. The fourth question certified is when a cause of action for breach of a contract to pay sales tax would accrue. Article two of the UCC provides: "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Minn.Stat. § 336.2–725(2) (1978). Since we accept the proposition that sales tax was due at the time of sale, the seller's cause of action, if any, accrued when Falstaff paid the contract price without remitting any sales tax.[3] As discussed above, the law provides that sales tax shall be stated and charged separately and shall constitute a debt from buyer to seller, which indicates the tax is due immediately upon sale.

■ While the equities appear to favor some sort of relief for Leisure, to do so would require us to formulate some statutory exception on the indemnity theory. Such an exemption applied to this case would mean a 12- to 15-year period to bring a claim from the date it arose. The statute is one of repose—witnesses die, records become lost and management changes over such an extensive period, as occurred here. Thus, it is for the legislature to address a solution if one is warranted. It can also be said that Leisure could have commenced an action anytime before October 30, 1976, and common sense dictated such a course in absence of a specific agreement by Falstaff to toll the statute.

Thus, the answers to the questions in the order in which they are asked are as follows:

1. The 6-year statute of limitations contained in Minn.Stat. § 541.05, subd. 1(2) (1978), is applicable to this case.

2. The cause of action for the claim under section 297A.03, subdivision 1, accrues at the time of the sale.

**2.** Leisure contended at oral argument that there was "an understanding" that Falstaff would reimburse Leisure for tax it paid to the state. We find no basis in the stipulated facts to support the existence of any such understanding. We therefore do not believe that the question certified contemplated the existence of any "understanding."

**3.** Given the specific language of the UCC that the aggrieved party need not have knowledge of the breach, the only way to avoid accrual at the time of sale would be to characterize the implied contract as one of indemnification. If Leisure could establish that Falstaff impliedly contracted to indemnify Leisure for any sales tax on sign tooling, then the rule that causes of action for indemnity accrue when a loss is suffered could be utilized. However, no such "understanding" or implied contract of indemnification can be extracted from the stipulated facts.

3. The 4-year statute of limitations contained in Minn.Stat. § 336.2–725(1) controls a seller's claim for collection of sales tax from a buyer brought under a breach of contract theory.

4. The cause of action for breach of a contract to pay sales tax accrues at the time the breach occurs. In this case, the breach occurred at the time of the sale.

5. Under the stipulated facts submitted by the parties, the causes of action asserted by the plaintiff are barred under applicable statutes of limitations.